# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRITTANY YAPLE, individually and as heir-at-law of John Brian Yaple, Deceased, <br><br>and<br><br>RALPH YAPLE, as Administrator of The ESTATE OF JOHN BRIAN YAPLE, Deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>JAKEL TRUCKING LLC; and CHRISTOPHER JAMES ERION<br><br>    Defendants. | Case No. _____ <br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW Plaintiffs Brittany Yaple, individually and as heir-at-law of John Brian Yaple, deceased, and Ralph Yaple, as the Administrator of the Estate of John Brian Yaple, deceased, and for their claims and causes of action against Defendants Jakel Trucking LLC and Christopher James Erion, state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Brittany Yaple is an individual residing in Grain Valley, Missouri. Ms. Yaple is the sole surviving adult child of John Brian Yaple, deceased ("Decedent"), and brings this action individually and as the heir-at-law of Decedent, pursuant to the provision of K.S.A. § 60-1901, *et seq.*

2. Decedent died without a spouse and without any children other than Plaintiff Brittany Yaple.

1

3. On May 21, 2020, Ralph Yaple was appointed as the Administrator of the Estate of John Brian Yaple, deceased, (the "Estate") by the Probate Division of the District Court of Cass County, Missouri, *In the Matter of the Estate of John Brian Yaple, Deceased*, Case No. 20CA-PR00117. As Administrator of the Estate, Mr. Yaple brings a survival cause of action, pursuant to K.S.A. § 60-1801, for personal injuries and conscious pain and suffering sustained by Decedent prior to his death.

4. Defendant Jakel Trucking LLC ("Jakel Trucking") is a foreign corporation incorporated under the laws of Minnesota and doing business in Kansas for profit. At all relevant times, Jakel Trucking was conducting business in Kansas. Jakel Trucking's trucks regularly operate on highways and roads in Kansas in the course of scope of Jakel Trucking's business. Moreover, Jakel Trucking conducts business as a motor carrier of property in interstate commerce and other authorities subject to the jurisdiction of and regulation by the United States Department of Transportation ("DOT") and the Federal Highway Administration ("FHWA"), and applied for motor carrier authority through the DOT to operate as a motor carrier under DOT # 2086150. Jakel Trucking can be served by serving its registered office for service of process at 84862 County Road 9, Sacred Heart, MN 56285.

5. Defendant Christopher Erion ("Erion") is an individual and was an employee of Jakel Trucking at all relevant times. Erion may be served with process at his home address of 3912 180th Street, Montevideo, MN 56265.

6. This Court has diversity jurisdiction over the claims in this complaint according to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and involves citizens of different states.

7. This Court has personal jurisdiction over Jakel Trucking, as it is a truckload carrier involved in the business of interstate trucking, operates in Kansas, and committed a tortious act in Kansas. Furthermore, as an interstate truckload carrier with routes in Kansas, Jakel Trucking's contacts with Kansas include establishing business relations with Kansas businesses, making and performing contracts within Kansas, and receiving payments for deliveries in Kansas, thereby economically benefitting from the State of Kansas. Kansas has a significant interest in regulating business and traffic within its borders. Jakel Trucking's contacts with Kansas are substantial, systematic, and continuous, such that the exercise of personal jurisdiction over Jakel Trucking is fair, just, and appropriate.

8. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 96 and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

9. Venue for this action is proper in this Court as the subject collision and death occurred in the State of Kansas and this Court is convenient for Plaintiffs, lay witnesses, expert witnesses, and Plaintiffs' counsel.

## ALLEGATIONS OF FACT

10. On information and belief, prior to May 14, 2019, Jakel Trucking hired Erion to work as a commercial motor vehicle driver.

11. On May 14, 2019, Erion, while acting in the course and scope of his capacity as an agent, servant, and/or employee of Jakel Trucking, was operating a commercial motor vehicle, specifically a tractor pulling a trailer that was owned, operated, and/or controlled by Jakel Trucking (the "subject truck"), and was traveling westbound on K-68 highway in Franklin County, Kansas.

12.     Jakel Trucking and Erion were operating as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSRs), 49 C.F.R. § 390 *et seq*.

13.     The subject truck was owned, operated, leased, dispatched, supervised, maintained, monitored, and/or controlled by Jakel Trucking.

14.     At the same time, behind the subject truck, Decedent was lawfully operating his 1995 Ford F-150 westbound on K-68 highway in Franklin County, Kansas.

15.     At all relevant times, Decedent was maintaining a reasonable, proper, and safe following distance between his vehicle and subject truck.

16.     At all relevant times, Decedent was driving properly and maintaining his vehicle in the proper lane of traffic.

17.     At all relevant times, Decedent exercised due care in the operation of his vehicle.

18.     At all relevant times, Decedent was wearing his lap belt and shoulder belt in the proper position.

19.     On information and belief, at or around approximately 5:53 a.m., near milepost 34.9, while traveling westbound, Erion negligently, carelessly, and recklessly drove the subject truck at a speed that exceeded a safe speed for the conditions then existing at the time.

20.     On information and belief, at or around the same time, Erion negligently, carelessly, and recklessly fully applied/slammed on the subject truck's brakes after striking a deer.

21.     On information and belief, at or around the same time, Erion achieved brake lock up as evidenced by very heavy and dark colored skid marks on the roadway.

22.     On information and belief, at or around the same time, Erion lost control of the truck, allowed it to travel into the eastbound lanes, and eventually struck a guardrail and jack-knifed into a bridge.

23. Erion told investigating officers at the scene and documented in a written statement that he "hit a deer which made [him] lose control of [his] vehicle and [his] semi jack knifed on a bridge and immediately a red pick up truck hit my rear [illegible] of my trailer and it started on fire."

24. At some point in time, Decedent's vehicle struck the subject truck.

25. Thereafter, Decedent's truck exploded into flames with Decedent still inside.

26. As a result of the collision, Decedent suffered significant personal injuries that resulted in his death.

27. Toxicological testing of Decedent's blood did not detect any common illicit or prescription drugs or ethanol in his system at the time of the crash.

28. At or around the time of the crash, there were no clouds reported with visibility up to 10 miles.

29. At or near the location of impact, there were no sight obstructions for either driver from the east or west and no roadway or other obstructions to block either driver's line of sight.

30. At or around the time of the crash, K-68 highway was dry.

31. The post-crash investigating officers documented a deceased deer on the right edge of the roadway.

32. The post-crash investigating officers documented a witness statement that Decedent was not driving erratically or weaving from mile post 48.3 on K-68 highway to the scene of the accident at mile post 34.9.

33. The post-crash investigating officers documented a witness statement that Decedent was following the subject truck at a "safe distance."

34. The post-crash investigating officers downloaded Decedent's cell phone history and found no evidence of a phone call, text message, or messenger notification at the time of the accident.

35. The post-crash investigation included documentation of a signed witness statement that stated that it sounded "like someone hit an animal and heard the tire skidding . . . and then heard a [illegible] loud crash like someone hit the bridge."

36. The subject truck was equipped with an anti-lock braking system ("ABS").

37. On information and belief, on the day of the crash, and for a period of time prior to the crash, the ABS on the subject truck was not in operation and/or not functioning properly.

38. On information and belief, on the day of the crash, and for a period of time prior to the crash, the dash icon pertaining to the ABS was illuminated in the subject truck.

39. Prior to the crash, Erion had pled guilty to and been convicted of speeding on the following occasions:

    a. On or around September 2007, Erion was charged with and convicted of speeding.

    b. On or around July 2008, Erion was charged with and convicted of speeding – driving 87 mph in a 55-mph zone.

    c. On or around September 2010, Erion was charged with and convicted of speeding.

    d. On or around October 2010, Erion was charged with and convicted of speeding – exceeding the limit by 15 mph or more.

    e. On or around January 2012, Erion was charged with and convicted of speeding – driving 50 mph in a 40-mph zone.

    f. On or around September 2014, Erion was charged with and convicted of speeding – driving 88 mph in a 55-mph zone.

  g.  On or around November 2014, Erion was charged with and convicted of speeding – driving 70 in a 65-mph zone.

  h.  In May of 2017, Erion was charged with and convicted of speeding – driving 65 in a 55-mph zone.

  i.  In December of 2017, Erion was charged with and convicted of speeding – driving 87 mph in a 55-mph zone.

  j.  In March of 2018, Erion was charged with and convicted of speeding – driving 72 mph in a 60-mph zone.

  k.  In July of 2018, Erion was charged with and convicted of speeding – driving 64 mph in a 55-mph zone.

40. After the crash, in or around August of 2019, Erion was charged with and convicted of speeding – driving 80 mph in a 60-mph zone.

41. After the crash, in or around February 2020, Erion was charged with and convicted of "unsafe lane usage on laned highway."

42. After the crash, in or around March 2020, Erion was charged with and convicted of speeding – driving 90 in a 60-mph "special zone set by commissioner."

43. The actions of Erion and Jakel Trucking, taken collectively or singularly, are the proximate cause of Decedent's death and of Plaintiffs' damages.

## COUNT I
### Negligence – *Respondeat Superior*

44. Plaintiffs incorporate by reference as though fully set forth herein the allegations contained in the paragraphs above.

45. At all relevant times, Erion was acting in the course and scope of his capacity as an agent, servant, and/or employee of Jakel Trucking, was acting under the rules, directions,

requirements, and control of Jakel Trucking, and was acting in furtherance of the business of Jakel Trucking.  Erion's acts and omissions are the acts and omissions of Jakel Trucking under the doctrines of *respondeat superior* and vicarious liability.

46. Erion had a duty to exercise reasonable care while operating the subject truck, which was owned, maintained, and controlled by Jakel Trucking.

47. Erion breached that duty of care by his acts and omissions as set forth herein.

48. Erion's acts and omissions constitute negligence.  On information and belief, Erion's negligent acts and omissions include, but are not limited to:

   a. Failing to exercise reasonable care in the operation of the subject truck and prior to beginning his trip on May 14, 2019;

   b. Driving at an excessive speed and/or too fast for conditions;

   c. Failing to drive in a careful and prudent manner under the conditions then existing and in the location described above;

   d. Failing to keep a careful lookout, despite having an excellent line of sight and a better vantage point to see ahead of him given his height above the roadway;

   e. Failing to act appropriately in response to the hazards of the roadway in front of him, including the deer;

   f. Failing to maintain control of the subject truck;

   g. Failing to apply the concepts of speed and space management while he operated the truck;

   h. Driving in a distracted manner;

   i. Failing to comply with Kansas state laws regarding the operation of his truck;

j. Failing to comply with the Federal Motor Carrier Safety Regulations ("FMCSRs"), which provide minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers, pursuant to 40 C.F.R. § 391.1(a) and (b), including but not limited to:

   i. Erion lacked the required knowledge and skills necessary to safely operate a commercial motor vehicle in violation of 49 C.F.R. §§ 383.110 and 383.111, including but not limited to motor vehicle inspection, repair, and maintenance requirements, procedures for safe vehicle operations, basic vehicle control, speed management, space management, hazard perceptions, emergency maneuvers, and skid control and recovery;

   ii. Erion operated the subject truck when he did not possess nor demonstrate the safe driving skills required pursuant to 49 C.F.R. § 383.113;

   iii. Erion failed to observe and follow the FMCSRs in violation of 49 C.F.R. § 390.11;

   iv. Erion was not qualified to drive a commercial motor vehicle in violation of 49 C.F.R. § 391.11 by operating the subject truck when he did not have sufficient knowledge of safe operating regulations, including safety systems knowledge, knowledge of basic control maneuvers, and basic information on hazard perception and when and how to make emergency maneuvers;

   v. Erion failed to meet the minimum duties and industry standards of care set forth in 49 C.F.R. § 392.3 by operating the subject truck when his ability or alertness was impaired;

      vi.      Erion failed to be knowledgeable of and/or comply with the FMSCRs pertaining to inspection, repair, and maintenance of commercial motor vehicles, including the subject truck, in violation of 49 C.F.R. § 396.1; and

      vii.      Erion failed to conduct or perform an appropriate pre-trip inspection to ensure that the subject truck was in safe operating condition in violation of 49 C.F.R. § 396.13.

49. Erion's negligent acts and omissions, in breach of his duty of care, directly and proximately caused Decedent's pain and suffering prior to death and his death.

50. Plaintiffs suffered damages by reason of Decedent's death, as more fully set forth below, as a direct and proximate cause of Erion's negligent acts and omissions.

51. Jakel Trucking is liable for all of Erion's negligent acts and omissions, and all damages resulting therefrom, under the doctrine of *respondeat superior*.

## COUNT II
### Negligence – Jakel Trucking

52. Plaintiffs incorporate by reference as though fully set forth herein the allegations contained in the paragraphs above.

53. Jakel Trucking owed a duty of reasonable care under the circumstances to prevent harm to third parties, including Decedent and Plaintiff, caused by its employee, Erion.

54. Jakel Trucking breached this duty by its acts and/or omissions as set forth herein and to be discovered through the litigation of this matter.

55. Jakel Trucking breached this duty by entrusting the subject truck to Erion, who it knew or should have known was an incompetent driver incapable of properly using same, and a habitually careless driver for the reasons set forth herein, including but not limited to his driving

record, prior speeding convictions, habits of recklessness, and by its acts and/or omissions set forth herein.

57. Jakel Trucking breached this duty by hiring and retaining Erion, who it knew or should have known was an unsafe and incompetent driver for the reasons set forth herein, including but not limited to his driving record, prior speeding convictions, habits of recklessness, and by its acts and/or omissions set forth herein.

57. Jakel Trucking breached this duty by failing to have policies and procedures in place that provided for implementation and enforcement of standards for competency and safety of applicant drivers before Jakel Trucking hired them, including Erion.

58. Jakel Trucking breached this duty by failing to engage in proper background checks and sufficient investigation of the safety and driving records of job applicants before Jakel Trucking hired them, including Erion.

59. Jakel Trucking breached this duty by keeping Erion employed after knowing or having reason to know that Erion's dangerous qualities and propensities created an undue risk to others, including Decedent and Plaintiffs.

60. Jakel Trucking breached this duty by failing to train Erion appropriately concerning the rules of the road, to obey traffic safety laws, safe practices for operating their massive tractor/trailer rigs on public roadways, including but not limited to proper visual search methods, the importance of space and speed management, hazard perception, how to safely apply brakes and safely institute avoidance maneuvers, and the importance of complying with federal regulations governing the operation of trucks engaged in interstate commerce, including but not limited to systematic inspections, repair, and maintenance of trucks.

61. Jakel Trucking breached this duty by failing to establish and/or enforce appropriate rules and regulations for Erion pertaining to the safety of other motorists on the roadways.

62. Jakel Trucking breached this duty by failing to properly supervise, manage, and otherwise exercise control or discipline over Erion, an employee with propensities that could pose a danger, in the performance of his job duties, including but not limited to his operation of the subject truck.

63. Jakel Trucking breached this duty by failing to properly conduct systematic and routine inspection, maintenance, and repair of the subject truck to make it safe to be driven on public roadways.

64. Jakel Trucking breached this duty by failing to inspect, maintain, and repair the ABS on the subject truck to make it safe to be driven on public roadways, of which it knew or should have known of.

65. Jakel Trucking breached this duty by failing to comply with and/or require compliance with the FMSCRs, which provide minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers, and also establish minimum duties of motor carriers with respect to the qualification of drivers pursuant to 40 C.F.R. § 391.1(a) and (b), including but not limited to:

   a. Failing to have adequate safety management controls in place that would require and provide that the driver had the required knowledge necessary to safely operate a commercial motor vehicle pursuant to 49 C.F.R. §§ 383.110, 383.111, and 383.113.

   b. Failing to be knowledgeable of and comply with all regulations applicable to its operations and failing to instruct Erion that he shall comply with all applicable

      regulations contained in the FMCSRs in violation of 49 C.F.R. § 390.3(e)(1) and (2);

c.   Failing to observe and follow the FMCSRs and failing to require observance by Erion of all driver duties or prohibitions in violation of 49 C.F.R. § 390.11;

d.   Failing to ensure that Erion had the requisite qualifications to drive a commercial motor vehicle and/or permitting Erion to drive a commercial motor vehicle despite his lack of qualifications in violation 49 C.F.R. § 391.11;

e.   Failing to perform an appropriate investigation and inquiry into Erion's driving record and safety background in violation of 49 C.F.R. § 391.23 and failing to perform an appropriate annual inquiry into and review of Erion's driving record in violation of 49 C.F.R. § 391.25;

f.   Failing to be knowledgeable of and/or comply with the FMSCRs pertaining to inspection, repair, and maintenance of commercial motor vehicles, including the subject truck, in violation of 49 C.F.R. § 396.1;

g.   Failing to systematically inspect, repair, and maintain the subject truck and failing to keep all parts and accessories on the subject truck, including but not limited to the ABS, in safe and proper operating condition at all times in violation of 49 C.F.R. § 396.3; and

h.   Allowing the subject truck to be operated in such a condition as to likely cause an accident in violation of 49 C.F.R. § 396.7.

66.   Jakel Trucking's negligent acts and/or omissions, in breach of the duties set forth above, directly and proximately caused Decedent's pain and suffering prior to death and his death.

67. Plaintiffs suffered damages by reason of Decedent's death, as more fully set forth below, as a direct and proximate cause of Jakel Trucking's negligent acts and omissions.

## DAMAGES

68. As a result of the negligence of Defendants as set forth in Counts I and II, Plaintiffs sustained the following damages in an amount in excess of $75,000.00, exclusive of interests and costs:

   a. Plaintiff Brittany Yaple claims on behalf of herself, individually, and as the surviving heir-at-law of Decedent, damages and losses she has sustained – and will continue to sustain in the future - as a result of the conduct of Defendants. These damages include those that are allowed pursuant to K.S.A. § 60-1901 *et seq.*, including but not limited to damages for mental anguish, suffering, and bereavement; loss of society, comfort, and companionship; loss of services, aid, financial support, and earnings that the Decedent would have provided; loss of attention, parental care, guidance, education and protection that the Decedent would have provided; for costs of this action, and for such other relief as may be just and proper in the circumstances.

   b. Plaintiff Ralph Yaple, as Administrator of and on behalf of the Estate of John Brian Yaple, Deceased, claims damages for injuries and pain that Decedent suffered between the time of accident and the time of his death, for which he would have maintained a cause of action had he survived, for costs of this action, and for such other relief as may be just and proper in the circumstances.

69. To the extent Defendants contend that any claim in this case for damages is subject to the caps contained in K.S.A. § 60-19a02 or 60-1903, which Plaintiffs expressly deny, those caps are unconstitutional in this non-medical malpractice case in any and all of the following respects:

   a. They violate the right to jury trial under Section 5 of the Kansas Constitution Bill of Rights by, inter alia, supplanting the role of the jury to determine and assess damages;

   b. They violate the right to remedy by due course of the law under Section 119 of the Kansas Constitution Bill of Rights by, inter alia: (i) arbitrarily limiting any recovery of non-economic damages to a cap of $250,000 to $350,000, irrespective of the nature, severity, extent, and duration of the injuries; and (ii) failing to contain a meaningful escalator clause or similar language, thus diluting a substantive remedy;

   c. They violate the equal protection provision of Section 1 of the Kansas Constitution Bill of Rights by, inter alia: (i) disparately impacting children, women, the elderly, minority groups, the unemployed, and/or victims seriously injured by tortfeasors; and (2) treating victims of tortfeasors differently based on the nature, severity, extent, and duration of the injuries and further, whether a jury awards them more or less than $250,000 or $350,000 in non-economic damages; and/or

   d. They violate the doctrine of separation of powers because they abolish the judiciary's authority to order new trials if the jury's award is inadequate, and because they are inflexible caps that rob judges of their judicial discretion by functioning as a statutory remitter effectively usurping the court's inherent, exclusive, and constitutionally protected power to grant remittiturs.

70. The conduct, decisions, choices, acts and/or omissions described herein of Defendants constitute wanton and willful conduct toward Plaintiffs and Decedent, entitling Plaintiffs to punitive damages to punish Defendants and deter Defendants and others from like conduct. Plaintiffs are entitled to recover punitive or exemplary damages because there is clear and convincing evidence that the death of Decedent resulted from the gross negligence of Defendants. Such gross negligence involved an act or omission by Defendants which, when view objectively from the standpoint of Defendants at the time of its occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

71. Plaintiffs seek pre-judgment and post-judgment interest in accordance with the maximum legal interest rates allowable as interpreted under the laws of the State of Kansas.

**JURY DEMAND**

72. Plaintiffs request a jury of twelve be convened for all issues so triable and are including the appropriate jury fee with the filing of this Complaint.

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein and, upon final hearing of this cause, Plaintiffs have judgment and monetary relief against the Defendants for damages described herein, plus costs of suit; pre-judgment and post-judgment interest at the maximum legal rates; and such other relief to which Plaintiffs may be justly entitled.

**PURSUANT TO LOCAL RULE 40.2, PLAINTIFFS HEREBY REQUEST THAT THE PLACE OF TRIAL OF THIS MATTER BE KANSAS CITY, KANSAS.**

Respectfully Submitted,

*/s/ Rachel N. Boden*

| | |
|---|---|
| R. Douglas Gentile | KS # 13907 |
| Randall L. Rhodes | KS # 15811 |
| Jeffrey D. Rowe | KS # 23083 |
| Rachel N. Boden | KS # 26238 |
| Daniel A. Kopp | KS # 28354 |

ROUSE FRETS WHITE GOSS GENTILE RHODES, P.C.
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
(913) 387-1600
(913) 928-6739 – facsimile
dgentile@rousepc.com
rrhodes@rousepc.com
jrowe@rousepc.com
rboden@rousepc.com
dkopp@rousepc.com
ATTORNEYS FOR PLAINTFFS