IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRITTANY YAPLE, et al.,

    Plaintiffs,

    v.

JAKEL TRUCKING LLC, et al.,

    Defendants.

Case No. 21-2045-JAR

**MEMORANDUM AND ORDER**

Plaintiffs Brittany Yaple, individually and as heir-at-law of John Brian Yaple, and Ralph Yaple, as the Administrator of the Estate of John Brian Yaple, bring negligence claims under Kansas law in this diversity action against Defendants Jakel Trucking, Inc. and Christopher J. Erion arising out of a motor vehicle accident. Before the Court is Defendants' Motion for Summary Judgment on Plaintiff's Claims for Punitive Damages (Doc. 49). The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants Defendants' motion for summary judgment.

**I.    Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if, under the applicable substantive law, "it is essential to the proper disposition of the claim."[4]  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue.'"[5]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[6]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[7]

## II.     Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiffs.  Defendants failed to specifically controvert Plaintiffs' statements of additional material fact as required by Fed. R. Civ. P. 56(c)(1) and D. Kan. Rule 56.1.  Therefore, to the extent such facts are material to the limited question before the Court and supported by the record, the Court deems them undisputed.[8]

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[7] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[8] *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); D. Kan. R. 56.1(b)(2), (c) ("All material facts set forth [in the non-moving party's statement of additional material facts] will be deemed admitted for the purpose of summary judgment unless specifically controverted").  Nonetheless, many of Plaintiffs' additional statements of fact are immaterial because they are only relevant to Plaintiffs' punitive damages request against Jakel Trucking.  For the reasons explained in Part III.B, punitive damages are unavailable against Jakel Trucking.

On May 14, 2019, John Brian Yaple ("Decedent") died at the age of forty-seven as a result of a collision with a Jakel Trucking LLC ("Jakel Trucking") tractor-trailer operated by Defendant Christopher J. Erion. Plaintiff Brittany Yaple is the sole surviving adult child of Decedent. Ralph Yaple is the Administrator of Decedent's estate.

At the time of the accident, Erion was employed by Jakel Trucking and was acting in the course and scope of his employment. Erion applied for a job with Jakel Trucking as a driver on January 24, 2019, and again on February 5, 2019. At the time he applied, Erion did not have a Class A commercial driver's license ("CDL"). His only commercial driving experience was driving a straight truck; he had no experience driving a tractor-trailer. Erion obtained a Class A CDL in late January or early February 2019, through the State of Minnesota.

On the night of May 13, 2019, Erion slept in the sleeper cab of the tractor-trailer overnight in La Cygne, Kansas. He woke up sometime between 4:00 and 5:00 a.m. the next morning to begin his haul job. Erion called his wife and then completed a 10–15 minute pre-trip inspection of the tractor-trailer. During the inspection, Erion looked for mechanical issues, safety issues, tire issues, loose or missing parts, and burnt-out lights. Erion testified at his deposition that he found no issues that needed to be addressed before his trip; he believed his brakes were in safe condition.

The wreck occurred around 5:35 a.m. on May 14, 2019. Erion was traveling westbound on K-68 Highway in Franklin, County, Kansas, when he struck a deer crossing the road while traveling at approximately 65 mph. Erion locked up his brakes and began an uncontrolled skid. Before hitting the deer, Erion steered left to avoid hitting it, which caused the front of the tractor to spin counterclockwise and impact the south guard rail of the Hickory Creek Bridge. This impact redirected the semi-tractor, facing it eastbound, into a jackknifed position with the

attached trailer covering both lanes of travel. The tractor-trailer became wedged at the entrance of the bridge—the cab on the south side of the bridge and the rear wheels of the trailer on the north side of the bridge. Decedent's 1995 Ford F-150 pickup truck crashed into the rear of the trailer, resulting in Decedent's death. The accident took place at a relative flat spot on the highway with no sight obstructions to drivers coming from the east or west. Decedent's truck became engulfed in flames after impacting the tractor-trailer.[9]

Although the posted speed limit on K-68 Highway where the accident occurred was 65 mph, the posted speed limit is not necessarily an appropriate safe speed. According to one of Plaintiffs' experts, 65 mph is too fast for a heavy duty tractor-trailer on a rural road in the dark, with sections of wooded environment, and an empty trailer that usually requires a greater stopping distance. When Erion saw the deer, he should have recognized it as a hazard and applied an appropriate driving defense that focused on maintaining his lane of travel by steering appropriately and maintaining control of his vehicle, rather than panic-braking and steering in a manner to avoid hitting the deer.

The Kansas Highway Patrol arrived at the scene of the accident after it happened. Erion completed and passed both a field sobriety test from Officer Stanley at the scene, and breath

---

[9] Defendants offer a report prepared by Technical Trooper Brian L. Horney at the conclusion of the Kansas Highway Patrol's CHART team investigation and forensic map of the collision. Doc. 50-3. That report concludes that Decedent was the sole cause of the collision because he was following too closely and failed to apply his own brakes prior to striking the back of the trailer. The report opines that Decedent was either distracted by his dog in the vehicle, distracted by an electronic device, fell asleep while operating the vehicle, or had a medical issue. *Id.* at 6. Plaintiffs object to the admissibility of this report under Fed. R. Evid. 403, 702, 703, 704, and 801. They submit evidence that the report offered by Defendants was superseded by an amended report dated May 23, 2022. *See* Doc. 52-3. That amended report does not include the statements about the Decedent being the sole cause of the accident; it states that "[i]t is not known why the driver of the pickup truck failed to stop his vehicle prior to striking the rear of the trailer." *Id.* at 5.

In the reply, Defendants do not respond to Plaintiffs' objections to the superseded Horney Report. Because it is Defendants' burden as the proponent of this evidence to show that it can be presented in an admissible form at trial, the Court sustains Plaintiffs' objections for purposes of summary judgment and does not consider Doc. 50-3. *See* Fed. R. Civ. P. 56(c)(2) & advisory committee's note to 2010 amendment; *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).

alcohol and urine tests at Ransom Memorial Hospital. Erion does not recall being contacted by the Kansas Highway Patrol for additional information after the accident.

The 2009 Volvo Tractor is equipped with a Bendix EC-60 Antilock Braking System/Automatic Traction Control unit. There were multiple active trouble or fault codes related to the automatic break system ("ABS") on Erion's tractor-trailer before, at the time of, and after the March 14, 2019 accident. "When an error is detected by the self-testing program, the EC-60 controller will illuminate the appropriate indicator lamp and place related trouble code information in the ECU's memory."[10]

### III.   Discussion

Plaintiffs allege two claims for relief in the Pretrial Order. First, they allege a negligence claim based on Erion's acts or omissions while acting in the course and scope of his employment with Jakel—a respondeat superior theory. Second, Plaintiffs allege a negligence claim against Jakel Trucking based on its own conduct, including failure to exercise reasonable care in hiring Erion, entrusting and equipping him with the trucking rig used in the accident, and failing to properly train him. Plaintiffs' prayer for relief seeks, among other things, "[p]unitive damages in an amount to punish Jakel Trucking and deter Jakel Trucking and others from similar conduct."[11]

Defendants move for summary judgment on Plaintiffs' punitive damages claim only, arguing that Plaintiffs cannot demonstrate either that Erion acted willfully or wantonly, or that punitive damages may be assessed against Jakel Trucking. Plaintiff responds that genuine issues of material fact exist and preclude summary judgment.

---

[10] Doc. 52-5 at 12.

[11] Doc. 48 at 9.

The parties agree that Kansas law governs the negligence claims in this case, including the issue of punitive damages. Under Kansas law, "[p]unitive damages are awarded on the theory that the defendant deserves punishment for his or her wrongful acts."[12] K.S.A. § 60-3702(c) requires that the plaintiff prove "by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." In addition, the statute limits punitive damages against an employer or principal as follows:

> (d) In no case shall exemplary or punitive damages be assessed pursuant to this section against:
>
> (1) A principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer; or
>
> (2) an association, partnership or corporation for the acts of a member, partner or shareholder unless such association, partnership or corporation authorized or ratified the questioned conduct.[13]

Thus, an "employer's or principal's alleged negligent acts in hiring, training, supervising, or retaining the employee/agent may not be advanced as a separate claim for punitive damages."[14]

Plaintiffs do not claim that Defendants acted with malice or fraud, which leaves willful or wanton conduct as the basis for their punitive damages claim. "A willful wrong involves an intentional act and intentional injury. A wanton wrong involves an intentional act but not an intentional injury; the act is intentional and purposeful, but the consequences of the act are

---

[12] *Adamson v. Bicknell*, 287 P.3d 274, 280 (Kan. 2012) (citing *Hays Sight & Sound, Inc. v. OENOK, Inc.*, 136 P.3d 428 (2006)).

[13] K.S.A. § 60-3702(d)(1)–(2).

[14] *Smith v. Printup*, 866 P.2d 985, 1001 (Kan. 1993); *see also Stallings v. Werner Enters., Inc.*, 598 F. Supp. 2d 1203, 1215 (D. Kan. 2009) (citing *Smith*, 866 P.2d at 1001).

not."[15]  To show wanton conduct, Plaintiffs must first "show that the act was 'performed with a realization of the imminence of danger.'"[16]  Second, Plaintiffs must show "that the act was performed with 'reckless disregard or complete indifference to the probable consequences of the act.'"[17]  The Kansas Supreme Court describes "wanton" behavior as follows:

> On a sliding scale, wanton behavior falls between negligent behavior and willful or malicious misconduct.  Wanton acts are those showing that the defendant realized the imminence of injury to others and refrained from taking steps to prevent injury because of indifference to the ultimate outcome, not that the defendant lacked simple due care.  In other words, "the actor [must] have reason to believe his act may injure another, and [commits the act anyway,] being indifferent to whether or not it injures [another]."[18]

### A.    Erion

Defendants argue that there is no evidence in the summary judgment record that Erion's conduct was willful or wanton.  According to Defendants, Erion confirmed the tractor-trailer's safe condition before driving it and was unaware of Decedent's presence behind him at the time of the accident.[19]  Additionally, Defendants point to evidence that Erion drove the posted speed limit, and that his use of the brakes to avoid hitting the deer was an involuntary loss of control, which does not satisfy the willful and wanton standard.  Therefore, Defendants contend that there is an absence of evidence to support either prong of the test for wanton conduct.

---

[15] *McElhaney v. Thomas*, 405 P.3d 1214, 1222 (Kan. 2017) (quoting *Bowman v. Doherty*, 686 P.2d 112, 118 (Kan. 1984)).

[16] *Adamson*, 287 P.3d at 281 (quoting *Reeves v. Carlson*, 969 P.2d 252, 254 (Kan. 1998)).

[17] *Id.* (quoting *Reeves*, 969 P.2d at 254).

[18] *Id.* at 281–82 (quoting *Frazier v. Cities Serv. Oil Co*., 157 P.2d 822 (Kan. 1945)) (citations omitted).

[19] Defendants offer no statement of fact about Erion's awareness of Decedent's pickup truck behind him. Instead, they make the conclusory assertion that he did not see the truck in their argument only.  Because Defendants did not offer this assertion as a statement of fact with a citation to the record, the Court does not consider it in ruling on summary judgment.

Plaintiffs respond that a reasonable jury could find that Erion acted willfully or wantonly based on the following evidence: (1) his admitted lack of experience driving a tractor-trailer; (2) he operated the tractor-trailer at an excessive speed given the road conditions; (3) he responded to the deer by steering left to avoid hitting it, panic-braking, and losing control of the vehicle; and (4) he ignored the dysfunctional ABS system on the truck, which he should have been aware of during his pre-trip inspection. Plaintiffs must be able to demonstrate that this specific conduct was willful or wanton.[20]  The Court agrees with Defendants that, on this record, a reasonable jury could not conclude that Erion's conduct was willful or wanton.

Plaintiffs make no showing with respect to Erion's knowledge of a dangerous condition. As for Erion's experience, it is uncontroverted that he had no previous experience driving a tractor-trailer like the one he drove on May 14, 2019, before Jakel hired him as a driver. But it is also uncontroverted that by the time Jakel Trucking allowed him to drive the tractor-trailer, he had obtained a Class A CDL that authorized him to drive that vehicle. Plaintiffs offer no evidence upon which a jury could infer that, despite his CDL, Erion had reason to believe that his lack of experience placed others in imminent danger when he drove the tractor-trailer.

Erion testified that he believed he was traveling at the appropriate speed because he was driving the posted speed limit. And Plaintiffs offer no evidence that Erion knew he should hit the deer instead of avoid it when it darted into the road. While Plaintiffs submitted evidence about what Erion's training should have been on the issue of animals in the roadway, there is no evidence he was aware of this guidance and ignored it. While evidence about Erion's lack of training may form the basis of Plaintiffs' negligence claim against Jakel Trucking for failure-to-

---

[20] *Reeves*, 969 P.2d at 256; *Adamson*, 287 P.3d at 281 ("[T]he inquiry should have focused on the act [the defendant] allegedly performed, *i.e.*, his choice to drive under circumstances that would likely cause a collision.").

8

train, for which punitive damages is not available, it does not support a finding of wantonness on "the questioned conduct" that proximately caused the accident.[21]

There is evidence that certain fault codes on the truck's ABS prior to May 14, 2019, were active but Plaintiffs offer no non-conclusory evidence that Erion was aware of these codes, or that the ABS itself was not functioning properly. Stanley B. Andrews, Plaintiffs' accident reconstruction and vehicle dynamics expert, states in his report that the active fault codes should have triggered an alert on the truck's dashboard, so Plaintiffs contend that a reasonable jury could infer that Erion saw and ignored the signal. Andrews also states in his report that if the ABS was "fully functioning," and if Erion "had maintained his original heading position," his loss of control that caused the accident could have been avoided.[22] But there is no information in the report linking the fault codes to the conclusion that the ABS failed. Nor does Plaintiffs' other expert, Paul Herbert, opine that the ABS failed, contributing to the accident. Herbert is a commercial motor vehicle safety and compliance expert. Most of his report concerns the industry standards that should have guided Erion's actions on May 14, 2019, and the adequacy of the safety programs in place by Jakel Trucking. Herbert opines that it was Erion's speed and improper reaction to the deer in the road that caused him to lose control of the tractor-trailer; he does not opine that the ABS system was not functioning properly.

The test for wanton conduct is whether "the defendant realized the imminence of injury to others and refrained from taking steps to prevent injury because of indifference to the ultimate outcome," not whether "the defendant lacked simple due care."[23] The mere possibility of danger

---

[21] *Smith v. Printup*, 866 P.2d 985, 1004 (Kan. 1993).

[22] Doc. 52-5 at 18.

[23] *Adamson*, 287 P.3d at 281

9

is not enough.[24] Erion testified that he had never experienced issues with the ABS, that he had no knowledge or information about the system not functioning properly, and that during his pre-trip inspection he did not notice any issues—he testified that he believed his brakes were in safe condition. Given this evidence, a reasonable jury could not find that Erion realized the imminence of injury to others based on the ABS fault codes and chose to drive anyway due to indifference on May 14, 2019.

There is likewise no evidence that Erion's decisions to drive 65 mph and attempt to avoid the collision were made with indifference to the risks posed to a following vehicle. It is uncontroverted that Erion conducted a 10–15 minute pre-trip inspection to check on safety and maintenance issues and that he determined there were none. It is also uncontroverted that Erion was driving the posted speed limit. Although a reasonable jury could determine that Erion should have reduced his speed and did not react properly to the sudden presence of a deer in the road, it is uncontroverted that he was unaware that he responded inappropriately, nor was he aware that he was driving too fast. Despite Plaintiffs' evidence that these acts likely contributed to the collision, it is not enough for Plaintiffs to demonstrate negligence in order to submit punitive damages to the jury. They must show that Erion knew that his actions or inactions would likely or probably result in injury to others.[25] The evidence presented on summary judgment falls short of this threshold.

### B. Jakel Trucking

Defendants next move for summary judgment on Plaintiffs' punitive damages claim against Jakel Trucking. Plaintiffs respond that summary judgment on punitive damages should

---

[24] *See, e.g.*, *Finke v. Post Acute Med., LLC*, No. 19-2056-DDC-KGG, 2021 WL 1663925, at *4 (D. Kan. Apr. 28, 2021) (citations omitted).

[25] *See id.* (citation omitted).

be denied because, when viewed in the light most favorable to Plaintiffs, a reasonable jury could find that (1) Jakel Trucking acted willfully or wantonly in hiring and failing to properly train Erion, and (2) Jakel Trucking authorized or ratified Erion's willful and wanton conduct.

As discussed above, Plaintiffs' first punitive damages theory is foreclosed by the plain language of § 60-3701(b).  Although Plaintiffs can proceed on its claim against Jakel Trucking for negligent hiring, training, retention, or supervision for purposes of compensatory damages, punitive damages are not available to them on that claim.[26]  Jakel Trucking cannot be liable for punitive damages except to the extent Erion, its employee, engaged in willful and wanton conduct and Jakel Trucking authorized or ratified that conduct.[27]  Because the Court grants summary judgment in favor of Defendants on the issue of Erion's willful and wanton conduct, it must necessarily grant summary judgment in favor of Jakel Trucking on the punitive damages claim, as well.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment on Plaintiff's Claims for Punitive Damages (Doc. 49) is **granted**.

**IT IS SO ORDERED.**

Dated: December 13, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[26] *See Adamson*, 287 P.3d at 280; *Patterson v. Dahlsten Truck Line, Inc.*, 130 F. Supp. 2d 1228, 1233 (D. Kan. 2000).

[27] *Smith v. Printup*, 866 P.2d 985, 1001 (Kan. 1993); *see also Stallings v. Werner Enters., Inc.*, 598 F. Supp. 2d 1203, 1215 (D. Kan. 2009) (citing *Smith*, 866 P.2d at 1001).