## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRITTANY YAPLE, individually and as heir-at-law of John Brian Yaple, Deceased,**

      **Plaintiff,**

      **v.**

**JAKEL TRUCKING LLC,**

      **Defendant.**

**Case No. 2:21-CV-02045-JAR**

## MEMORANDUM AND ORDER

On May 17, 2023, a jury rendered a verdict in favor of Plaintiff Brittany Yaple on negligence claims under Kansas law against Defendant Jakel Trucking LLC. The Court entered judgment on the verdict on May 18, 2023. This matter is before the Court on Defendant's Motion to Alter or Amend Judgment (Doc. 129).[1] The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants Defendant's motion.

### I.    Background

On May 14, 2019, John Brian Yaple ("Decedent") died at the age of forty-seven as a result of a collision between his vehicle and a tractor-trailer owned by Jakel Trucking LLC and driven by its employee, Christopher J. Erion. Plaintiff Brittany Yaple is the sole surviving adult child of Decedent. In this action, Plaintiff first alleged a negligence claim based on Erion's acts or omissions while acting in the course and scope of his employment with Defendant—a

---

[1] Technically still pending before the Court is the motion for judgment as a matter of law made orally by Defendant at the close of Plaintiff's evidence at trial on May 16, 2023. The Court initially took Defendant's motion under advisement, but Defendant did not follow up with a renewed motion for judgment as a matter of law at the close of all evidence or otherwise provide any basis for granting such a motion, orally or written. Judgment has been entered on the verdict. The Court denies Defendant's motion for judgment as a matter of law finding that there was sufficient evidence for the jury to find in favor of Plaintiff.

respondeat superior theory.  Second, Plaintiff alleged a negligence claim against Defendant based on its own conduct, including failure to exercise reasonable care in hiring Erion, entrusting and equipping him with the trucking rig used in the accident, and failing to properly train him. Plaintiff sought damages, including punitive damages.[2]

On December 13, 2022, the Court granted summary judgment in favor of Defendant on Plaintiff's punitive damages demand.  The case then proceeded to trial on May 10, 2023.  The jury returned a verdict on May 17, 2023.  Specifically, the jury attributed 25% of fault to Defendant on the respondeat superior claim, 45% of fault to Defendant on the direct negligence claim, and 30% of fault to Decedent.  The jury found that Plaintiff sustained $840,000 in damages: $60,000 for noneconomic loss to date; $440,000 for future noneconomic loss; $12,000 for economic loss to date; and $328,000 for future economic loss.  The Court entered judgment on the verdict on May 18, 2023.  Because the jury attributed 30% of fault to Decedent, the Court reduced the total damage amount by 30%, resulting in a total damage amount of $588,000.

Defendant moves to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  Defendant argues that when the Court entered judgment, the Court should have further reduced the noneconomic damages to $250,000 pursuant to the damages cap for wrongful death cases in K.S.A. § 60-1903.  Plaintiff responds that Defendant waived this argument by failing to plead it as an affirmative defense or otherwise asserting it in the Pretrial Order.  Additionally, Plaintiff notes that she has maintained throughout the case that K.S.A. § 60-1903 is unconstitutional, but because her position is that Defendant has waived the damages cap

---

[2] Plaintiff Brittany Yaple's Complaint was brought by herself as well as by Ralph Yaple, the Administrator of the Estate of John Brian Yaple, against Defendant Jakel Trucking, LLC as well as against Christopher James Erion, the driver of Defendant Jakel's truck that struck John Brian Yaple's vehicle.  Plaintiff later moved to dismiss all of Ralph Yaple's claims against both Defendants, as well as her own claims against Christopher James Erion. *See* Doc. 68.  The Court granted Plaintiff's motion, *see* Doc. 110, leaving only Plaintiff Brittany Yaple and Defendant Jakel Trucking, LLC as parties.

argument, Plaintiff does not fully brief the constitutionality issue and explains that the Court need not reach it due to Defendant's waiver.  Defendant replies that its damage cap argument is not an affirmative defense that can be waived and that in fact it is Plaintiff who suffers from waiver due to the fact that she did not properly raise or preserve her constitutional challenge to K.S.A. § 60-1903.  Defendant also argues that even if Plaintiff had properly litigated it, her constitutional challenge to the statute fails on its merits.

## III.    Discussion

Defendant moves to alter or amend judgment under Federal Rule of Civil Procedure 59(e).  Under Rule 59(e), the Court may alter or amend judgment "because of (1) a change in law; (2) new evidence; and/or (3) clear error or manifest injustice."[3]  Whether to grant a motion to alter or amend is left to the Court's discretion.[4]

As a threshold matter, the Court must determine whether the statutory damages cap argument is an affirmative defense which must have been pled by Defendant and, if so, whether it waived it by not pleading it.  For the reasons set forth below, the Court finds that the damages cap is not an affirmative defense.  Then, the next two questions before the Court are whether Plaintiff has properly raised and preserved her constitutional challenge to the damages cap in K.S.A. § 60-1903 and, if so, whether the damages cap in the statute is unconstitutional.  For the reasons set forth below, the Court finds that the answer to both questions is no.

---

[3] *Lucas v. Dadson Mfg. Co.*, No. 22-2107-KHV, 2023 WL 3433964, at *1 (D. Kan. May 12, 2023) (citing *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[4] *Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

## A.     Defendant Did Not Waive its Statutory Damages Cap Defense

Plaintiff argues that Defendant waived its argument regarding the damages cap in K.S.A.

§ 60-1903 by failing to plead it as an affirmative defense and by failing to include it in the

Pretrial Order.  For the reasons set forth below, the Court rejects both arguments.

### 1.     The Damages Cap in K.S.A. § 60-1903 is Not a Waivable Affirmative Defense

It is well established that "a state's statutory limit on damages is substantive law that

federal courts sitting in diversity must apply."[5]  And the Tenth Circuit has recently held that the

question of whether such a statute operates as an affirmative defense is also a question of

substantive state law.[6]  Therefore, the Court turns to Kansas substantive law to determine

whether K.S.A. § 60-1903 creates an affirmative defense.  The Kansas Supreme Court has not

had an opportunity to decide this issue, so the Court must predict how it would rule.  In doing so,

the Court must give "proper regard to relevant rulings of other courts of the State,"[7]  and "may

also consider 'appellate decisions in other states with similar legal principles . . . and the general

weight and trend of authority in the relevant area of law.'"[8]

The Court has found only one decision from a Kansas state court on this issue.  In

*McGinnes v. Wesley Med. Ctr.*, the Kansas Court of Appeals held that the statutory caps on

damages found in K.S.A. § 60-1903 (as well as K.S.A. § 60-19a02) "do not have to be pled in

---

[5] *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428 (1996)).

[6] *See id*. at 1162–65 (finding first that under the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), there was no conflict between the state statute limiting damages and the Federal Rules, and second, that under the Supreme Court's decision in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), whether a statute provides an affirmative defense or a pleading requirement is a question of substantive state law).

[7] *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 765 (10th Cir. 2019) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).

[8] *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (omission in original) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

avoidance or as affirmative defenses."[9]  The Court predicts that the Kansas Supreme Court

would rule in the same way as the Kansas Court of Appeals in *McGinnes*, and find that

Defendant did not waive its right to assert the statutory damages cap argument by failing to plead

it as an affirmative defense.

### 2. Defendant Did Not Waive Statutory Damages Cap Argument by Failing to Raise it in Pretrial Order

Plaintiff also claims that Defendant waived the damages cap argument by failing to

include it in the Pretrial Order.  The general rule in the Tenth Circuit is that claims not included

in the pretrial order are deemed waived,[10] but, as is often the case, there are exceptions to this

general rule.  The purpose of a pretrial order is to "measure the dimensions of a lawsuit and

govern its course in the absence of some good reason for departure,"[11] and to "avoid surprise by

requiring parties to 'fully and fairly disclose their views as to what the real issues of the *trial* will

be.'"[12]  But the pretrial order "should not be used to defeat the lawsuit on a technicality or be

construed 'in the spirit of a common law pleading.'"[13]  The question of whether there is a

statutory limit on noneconomic damages is not a merits issue for trial, nor is it a question of fact

that the jury would have to decide.  Therefore, including this issue in the Pretrial Order here

would not have furthered the purpose of a pretrial order which is to "facilitate a *trial* on the

*merits*."[14]  Moreover, because it is necessarily a posttrial issue, there was no risk of Plaintiff

---

[9] 224 P.3d 581, 591 (Kan. Ct. App. 2010).

[10] *See, e.g., Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (stating general rule).

[11] *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963).

[12] *Rhoads v. Stormont Vail Healthcare, Inc.*, No. 22-4005-JWB, 2023 WL 3933746, at *10 (D. Kan. June 9, 2023) (emphasis added) (quoting *Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016)).

[13] *Koch v. Koch Indus., Inc.*, 179 F.R.D. 591, 596 (D. Kan. 1993) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979)).

[14] *Id.* (emphasis added); *see also United States ex rel. Sun Const. Co. v. Torix Gen. Constr., LLC*, No. 07-cv-01355, 2011 LEXIS 59699, at *7–8 (D. Colo. June 6, 2011) ("While certainly substantive claims must be included in the final pretrial order in order to narrow the issue to be presented to the jury for trial, none of the

being surprised at trial that Defendant intended to assert this defense—the time to assert the defense is now, posttrial.[15]  For these reasons, the Court finds that Defendant did not waive this defense by failing to raise it in the Pretrial Order.

### B.    Plaintiff Did Not Waive Her Constitutional Challenge to K.S.A. § 60-1903

Having found that Defendant did not waive its right to assert the damages cap under K.S.A. § 60-1903, the Court turns to Defendant's argument that Plaintiff waived her constitutional challenge to the statute.  Defendant's argument is threefold: (1) Plaintiff failed to comply with Fed. R. Civ. P. 5.1, which sets forth the procedure for constitutional challenges to state statutes; (2) Plaintiff waived her right to assert such a constitutional challenge by failing to include it in the Pretrial Order; and (3) Plaintiff's constitutional challenge fails on the merits. The Court addresses each argument in turn.

### 1.    Plaintiff Failed to Comply with Procedures Set Forth in Rule 5.1, but this Failure is not Fatal to her Constitutional Challenge

Defendant points to Plaintiff's failure to comply with Fed. R. Civ. P. 5.1, which sets forth the procedure for constitutional challenges to statutes.  Under Rule 5.1(a), a party that raises a constitutional challenge to a state statute in a case pending in federal court where the state government is not already a party has a duty to file a notice with the court and serve the notice on the state attorney general "promptly" after the challenge is raised.  Defendant is correct that

---

authority cited is persuasive for the proposition that attorneys fees, costs and prejudgment interest must be set out as a claim in the final pretrial order in order to be preserved.  Such determinations are not a part of the merits of the claim—in that they are clearly not jury questions or triable issues—but are rather classic post-trial remedies available only to the prevailing party.").

[15] *See, e.g., Wagner v. SFX Motor Sports, Inc.*, 522 F. Supp. 2d 1330, 1346 (D. Kan. 2007) (rejecting plaintiff's argument in a posttrial motion that defendant "did not properly preserve the application of the statutory cap as an affirmative defense in the pretrial order" and holding that because "the pretrial order recites the parties' stipulation that Kansas substantive law is controlling, the court is wholly unpersuaded . . . that [defendant] had to specifically plead the damages cap in the pretrial order" or that "plaintiff got sand-bagged by [defendant] by making any strategic or tactical decisions in reliance upon the assumption that the cap was inapplicable."), *rev'd on other grounds*.

Plaintiff did not comply with these procedures.  However, Rule 5.1 makes clear that a party's failure to file and serve such notice "does not forfeit a constitutional claim or defense that is otherwise timely asserted."[16]  Therefore, Plaintiff's failure to adhere to the notice procedures under Rule 5.1 is not fatal to her constitutional challenge, and the Court proceeds to consider whether Plaintiff's constitutional claim was "otherwise timely asserted."

> ### 2.      Plaintiff Did Not Waive Her Constitutional Challenge by Failing to Include it in the Pretrial Order

Defendant asserts that notwithstanding Plaintiff's failure to comply with the notice procedures in Rule 5.1, Plaintiff's constitutional challenge to K.S.A. § 60-1903 is waived because Plaintiff did not include it in the Pretrial Order.  The Court disagrees.  For the same reasons that Defendant's statutory damages cap argument is not waived for failure to include it in the Pretrial Order, Plaintiff's posttrial, non-merits-based, non-factual question regarding the constitutionality of K.S.A. § 60-1903 could not have surprised Defendant at trial and, therefore, is also not waived.

> ### 3.      Plaintiff's Constitutional Challenge Fails on the Merits

As Defendant notes, the wrongful death damages cap in K.S.A. § 60-1903, originally passed in 1963, was in full force and effect at the time Plaintiff filed her lawsuit, as well as at the time of judgment, and the parties do not dispute that it applies to this case.  However, Plaintiff asserts a constitutional challenge to K.S.A. § 60-1903, arguing that it violates the right to jury trial under Section 5 of the Kansas Constitution and the common-law right to remedy under Section 18 of the Kansas Constitution.  This statute has not been found unconstitutional by the

---

[16] Fed. R. Civ. P. 5.1(d).

Kansas Supreme Court and, in fact, Kansas courts analyzing it have explicitly found it to be constitutional.[17]

However, Plaintiff's constitutional challenge to K.S.A. § 60-1903 tracks the arguments asserted in a recent Kansas Supreme Court case, *Hilburn v. Enerpipe*.[18]  There, the plaintiff challenged the constitutionality of K.S.A. § 60-19a02, which imposed a noneconomic damages cap of $250,000 in personal injury actions.[19]  In *Hilburn*, the Kansas Supreme Court ultimately overturned its decision in *Miller v. Johnson* and held that the personal injury damages cap in K.S.A. § 60-19a02 was unconstitutional.[20]

Prior to *Hilburn*, the Kansas Supreme Court's decision in *Miller* held that any impairment of the right to jury trial under Section 5 of the Kansas Constitution, or the common-law right to remedy under Section 18 of the Kansas Constitution, was permissible if a two-part due process-based quid pro quo test was satisfied.[21]  The quid pro quo test required a showing that the impairment was "reasonably necessary in the public interest to promote the public welfare" and that the Kansas Legislature provided an adequate and viable substitute for the impaired right.[22] In *Hilburn*, the court held that applying such a quid pro quo test to an express constitutional right, such as the right of trial by jury in Section 5 of the Kansas Constitution, "transforms what the people made inviolate into something violable at will."[23]  For that reason, the court

---

[17] *See, e.g., McGinnes v. Wesley Med. Ctr.*, 244 P.3d 581, 592 (Kan. Ct. App. 2010); *see also Adams v. Via Christi Reg'l Med. Ctr.*, 19 P.3d 132, 139 (Kan. 2001); *Leiker v. Gafford*, 778 P.2d 823, 850 (Kan. 1989*), overruled on other grounds sub. nom.*, *Martindale v. Tenny*, 829 P.2d 561, 628–29 (Kan. 1992).

[18] 442 P.3d 509, 511 (Kan. 2019).

[19] *Id*.

[20] *Id*. (overturning *Miller v. Johnson*, 289 P.3d 1098 (Kan. 2012)).

[21] *Miller*, 289 P.3d at 1112.

[22] *Id*. at 1114.

[23] *Hilburn*, 442 P.3d at 515 (quoting *Miller*, 289 P.3d at 1137 (Beier, J., concurring in part and dissenting in part)).

abandoned the quid pro quo test, and went on to hold that the noneconomic damages cap in K.S.A. § 60-19a02 was unconstitutional because it "substitute[ed] the Legislature's nonspecific judgment for the jury's specific judgment."[24]  In reaching its decision in *Hilburn*, the Kansas Supreme Court emphasized that Section 5 of the Kansas Constitution "preserves the jury trial right as it historically existed at common law when our state's constitution came into existence."[25]  The court stopped short of holding that as a result, any statute enacted *after* the Kansas Constitution came into existence would not be afforded the same preservation.

The Kansas Supreme Court did not specifically address in *Hilburn* the constitutionality of the wrongful death statute at issue here, K.S.A. § 60-1903.  Moreover, the parties have not pointed to, and the Court has not found, a subsequent Kansas Supreme Court decision analyzing K.S.A. § 60-1903 in the wake of *Hilburn*.  Therefore, to the extent Plaintiff argues that *Hilburn* applies to § 60-1903, the Court must again predict how the Kansas Supreme Court would rule. To do so, the Court must give "proper regard to relevant rulings of other courts of the State,"[26] and "may also consider 'appellate decisions in other states with similar legal principles . . . and the general weight and trend of authority in the relevant area of law.'"[27]

The Court predicts that the Kansas Supreme Court would find the noneconomic damages cap in K.S.A. § 60-1903 constitutional.  Indeed, when presented with the question of whether another statute, enacted after the Kansas Constitution was passed, was constitutional under Sections 5 and 18, the Kansas Supreme Court found that it was.[28]  In *Tillman v. Goodpasture*, the

---

[24] *Id*. at 524.

[25] *Id*. at 514 (quoting *Miller*, 289 P.3d at 1108) (collecting cases).

[26] *Bill Barrett Corp*. 918 F.3d at 765 (quoting *Stickley* 505 F.3d at 1077).

[27] *Amparan*, 882 F.3d at 947 (omission in original) (quoting *Wade*, 483 F.3d at 666).

[28] *See Tillman v. Goodpasture*, 485 P.3d 656 (Kan. 2021).

Kansas Supreme Court was tasked with determining the constitutional validity of K.S.A. § 60-1906(a), a statute that abolished a medical malpractice claim commonly referred to as a "wrongful birth" action.[29]  Similar to *Miller* and *Hilburn*, the plaintiffs in that case argued that the statute violated both Sections 5 and 18 of the Kansas Constitution.[30]  In upholding the constitutionality of the statute, the Kansas Supreme Court explained that the protections afforded by Sections 5 and 18 of the Kansas Constitution "extend under our caselaw only to common-law causes existing at the time these constitutional protections were adopted" and, therefore, did not protect the plaintiffs in that case from the statute enacted post-constitution.[31]

Like a wrongful birth action, and unlike a personal injury action, an action for wrongful death was not recognized at common law in Kansas.[32]  Therefore, applying reasoning in both *Hilburn* and *Tillman*, the Court predicts that the Kansas Supreme Court would find that the constitutional protections found in Sections 5 and 18 of the Kansas Constitution are not extended to the noneconomic damages cap in K.S.A. § 60-1903.[33]  For these reasons, the Court grants Defendant's motion to alter or amend the judgment, and directs the clerk to enter an amended judgment in the total amount of $413,000, which limits the noneconomic damages awarded to

---

[29] *Id*. at 659

[30] *Id*.

[31] *Id*.

[32] *See, e.g., Shelton v. Dewitte*, 26 P.3d 650, 657 (Kan. 2001) (Six, J., dissenting) ("Wrongful death claims did not exist at common law.  Wrongful death actions are legislatively created.") (citation omitted); *Karhoff v. Nat'l Mills*, 851 P.2d 1021, 1024 (Kan. App. 1993) ("Kansas common law did not recognize a civil claim for wrongful death at the time our Bill of Rights was adopted.  In Kansas, a wrongful death action is purely a creature of statute.") (citations omitted).

[33] The Court acknowledges that in *Perez v. Wesley Medical Center, LLC*, the Sedgwick County District Court denied a motion to reduce damages in accordance with the statutory damages cap under 60-1903 on the basis that *Hilburn* "applies to 60-1903 (wrongful death)."  *See* 2019 WL 13174800, at *1 (Kan. Dist. Ct. Nov. 19, 2019). However, the court did not provide context for its ruling, nor did it have the benefit of the Kansas Supreme Court's 2021 analysis in *Tillman* when issuing its decision.  The Court is satisfied that after *Tillman*, both the district court and the Kansas Supreme Court would rule as this Court has predicted.

Plaintiff to $250,000 as set forth in K.S.A. § 60-1903.  The Court then reduces the total damages award by 30%—the amount of fault the jury attributed to Plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Alter or Amend Judgment (Doc. 129) is **granted**.  The clerk is directed to enter an amended judgment in the total amount of $413,000.

**IT IS SO ORDERED.**

Dated: July 27, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
